## FULLERTON v. BIGELOW et al. †

(Circuit Court of Appeals, First Circuit. April 6, 1910.)

### No. 845.

1. CONTRACTS (§ 241*)—MODIFICATION—CONSTRUCTION—CORPORATE BONDS—SALE.

A contract provided for the sale by complainant to M. of certain bonds of a mining corporation with certain accompanying shares of stock for $65,000, $10,000 of which was deposited with respondent to secure to M. the purchase of the corporation's property on foreclosure, but not to exceed 10 per cent. of the corporation's bonded indebtedness; M. being entitled to deduct from the $10,000 the difference between such 10 per cent. and the amount he was required to pay for the property "at the lowest figure obtainable at public sale." M., however, before signing the contract, added an agreement that it was understood that the $10,000 was to be held in escrow to protect him against "any costs or expenses over 10 per cent." in settling for and securing the cancellation of certain outstanding bonds or a judgment held by K. *Held*, that the added provision modified the contract as originally written, and hence M. was only required to proceed in a prudent manner to secure an arrangement for the satisfaction of the K. bonds to be perfected at the time of the purchase under foreclosure sale.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1126; Dec. Dig. § 241.*]

2. DEPOSITARIES (§ 4*)—DUTIES—LITIGATION.

In general, a mere depositary is bound to remain neutral and cannot take part in the principal litigation, nor can he involve himself in costs and fees beyond what is required to obtain a solicitor to observe the proceedings in the case.

[Ed. Note.—For other cases, see Depositaries, Cent. Dig. § 9; Dec. Dig. § 4.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit by William Fullerton against Edmund S. Bigelow and others. Decree for respondents, and complainant appeals. Affirmed.

J. A. Bentley and Joseph W. Lund (R. J. Cram, on the brief), for appellant.

G. Philip Wardner (Henry A. Wyman and Henry O. Cushman, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 26, 1910.

PUTNAM, Circuit Judge. This was a bill in equity which arose. out of contracts between William Fullerton, the complainant, on the one part, and, on the other part, Willis G. Myers, who was the principal obligator, and Edmund S. Bigelow, who was the repositor of the money involved, $10,000, which was placed in his hands to be ultimately paid by him to either Fullerton or Myers, or in part to each. Bigelow paid a portion of the amount to Myers, and offers the balance to Fullerton. Fullerton claims the entire sum. As the arrangement made Bigelow a depositary, with certain obligations as to the distribution of the fund, he became a trustee; so that equity has jurisdiction notwithstanding the amount involved is a specific pecuniary sum. The Circuit Court entered a decree in favor of the respondents, and the complainant appealed to us. The propositions involved are somewhat difficult; but we have had the assistance of thorough presentation on one side and the other by the counsel for the respective parties, and we have given the case careful consideration. We are of the opinion that the respondents must prevail.

The contracts out of which the deposit arose, with a brief statement of the facts as made by the complainant, tell the story sufficiently. The contract between Fullerton and Myers, as submitted by Fullerton to Myers, bears date April 21, 1906. It was specific and clear, and there is nothing in the case which would justify any departure from it if it stood as originally drawn. It was signed by Fullerton, and forwarded by him to Myers for his signature. In that form it was as follows:

"Whereas, under contract dated October 30, 1904, between William Fullerton, of Denver, Colo., of the first part, and Willis G. Myers, of Boston, Mass., of the second part, the said Fullerton agreed to deposit in escrow 335 of the first mortgage bonds (of the par value of $335,000) of the Gunnell Gold Mining & Milling Company, of Gilpin county, Colo., under certain conditions to be kept and performed by both parties hereto; and,

"Whereas, by mutual agreement, the said contract has at or about this date been canceled and declared to be of no further force or effect; and,

"Whereas, in lieu thereof, the said Myers has agreed to purchase the whole of the said bonds and stock mentioned in said contract—that is to say, the par value of $335,000 bonds, and certificates of common stock of said company amounting to 3,394 shares, and of preferred stock amounting to 682 shares, or a total of 4,076 shares more or less, of a par value of $407,600 of said stock— for the sum of eighty-five thousand dollars ($85,000); that is to say, sixty-five thousand dollars ($65,000) in cash, and twenty thousand dollars ($20,000) in the six per cent. interest-bearing, first mortgage bonds of a new corporation organized, or to be organized, by said Myers and others in Boston for the purpose of taking over the property of the Gunnell Gold Mining & Milling Company; and,

"Whereas, the said Fullerton has already deposited all the bonds and stock before referred to with the United States Trust Company of Kansas City, Mo.:

"Now, therefore, the said Fullerton hereby acknowledges receipt of fifty-five thousand dollars ($55,000) in cash from the said Myers, at the hands of the trust company above mentioned, as a part of the $65,000 cash hereinbefore mentioned; and further acknowledges receipt from said Myers, through the said trust company, of an agreement to deliver to him twenty thousand dollars ($20,000) of the new first mortgage bonds above referred to, as soon as the same shall be issued by the new corporation hereinabove mentioned.

."The ten thousand dollars ($10,000) remaining unpaid of the total amount of $65,000 to be paid in cash by said Myers to said Fullerton, the latter hereby agrees shall remain in trust in the hands of said United States Trust Company of Kansas City, Mo., until the following conditions shall be carried out, viz.:

"At the earliest day practicable the said Myers is to cause foreclosure pro-

ceedings to be begun against the Gunnell Gold Mining & Milling Company under the terms of a trust deed of said company, securing an issue of $750,000 bonds of said company, made in June, 1899, and as a part of such proceedings intends to purchase, or cause to be purchased, the entire property of said Gunnell Company at the lowest figure obtainable at public sale.

"Whereas, there is a certain judgment recorded in favor of the Kimber estate against the said Gunnell Company for thirty-seven thousand dollars ($37,000) of the said first mortgage bonds of said Gunnell Company.

"Now, therefore, if at such sale said Myers succeeds in buying in the property at a figure representing not more than ten per cent. (10%) on all the outstanding bonded indebtedness of said company, including the amount of bonds represented by the so-called Kimber judgment, then the said Myers agrees to authorize the said United States Trust Company to release the said amount of $10,000 cash deposited by said Fullerton in escrow as above, and to pay the same over to said Fullerton on his demand immediately after the issuance to said Myers, or the new company represented by him, of a certificate of sale of said property under the Gunnell Company's trust deed before mentioned.

"If, on the other hand, the said Myers should be compelled at said sale to pay a larger amount than 10 per cent. on the bonds represented by the Kimber judgment, then such amount in excess of 10 per cent. is to be deducted from the $10,000 cash deposited as above, and the balance remaining is to be turned over by said trust company to said Fullerton, on demand, at the time of the issuance of certificate of sale.

"In witness whereof, the said parties hereto have hereunto set their hands and seals this 21st day of April, A. D. 1906.

"[Signed] William Fullerton.

"Witness to signature of William Fullerton: Olga Jacobson."

It was, however, tampered with, because Myers attached to it the following, which he signed:

"Boston, Mass., April 21, 1906.

"I agree and assent to this instrument, understanding that it is the intention of this instrument and the parties hereto that if the cost to me of the Kimber bonds or judgment to the extent of $37,000 exceed 10 per cent. of their face either at the time of the purchase under foreclosure sale or through any proceedings thereafter, then the amount of the excess is to be deducted from said $10,000; it being the understanding that this sum of $10,000 is to be held in escrow to protect me against any cost or expenses over 10 per cent. in settling for and securing the cancellation of the said bonds or judgment.

"[Signed] Willis G. Myers.

"Witness: B. L. Newman."

Myers returned it in that form to Fullerton. It was a biparty contract, and it was to have been signed by both Fullerton and Myers; but the only signature by Myers was in the manner we have shown. Fullerton accepted it in that form, and, therefore, the addition put on by Myers must be held to be a part of it.

There was a large amount of correspondence preceding the execution of the contract and accompanying it; but under the well-settled rules of law this cannot be taken into consideration.

The appropriate facts necessary to explain the circumstances to which the contract refers are stated by the respondents as follows:

"All efforts to get the Kimber judgment out of the way at the 10 per cent. figure having failed, foreclosure proceedings were instituted in the district court for the city and county of Denver, in May, 1906. Mrs. Kimber promptly appeared and answered and announced her intention of fighting foreclosure to the last ditch in the trial court, and by appeal to the Supreme Court of Colorado, and otherwise. This meant that the case would be in the courts at least four years. Mrs. Kimber further declared that, whenever the sale took place, she would by bidding force the price up to a figure that would net her the same

rate that Fullerton was receiving on his bonds, to wit, about 30 per cent. of the face value. As the bonds in the new company went on interest July 1, 1906, and as Myers, to Fullerton's knowledge, had agreed with those who were associated with him in the purchase of the mine to turn over a clean title to the company, the prospect of having to wait four years without deriving any income from the mine, and with no certainty of success at the end of that period, was disastrous. Myers accordingly agreed, if the Kimbers withdrew their opposition, to cause the property to be bid in at the sale at a figure that would net them $10,000, which would give them the same percentage of the par value of their bonds as Fullerton was getting for his. This was done, and the cost to Myers of thus getting rid of the Kimber judgment was the $10,000 paid to the Kimbers, and $500 for counsel fees. $6,800, therefore, was the difference between the $10,500 and $3,700, which was 10 per cent. of the $37,000 par value of the Kimber bonds; and this sum of $6,800 was paid over by Bigelow as trustee on Myers' demand. Bigelow tendered the balance of $3,200 to Fullerton, who declined to accept the same; and the $3,200 remained in Bigelow's hands, as trustee, until it was ordered by the court below to be paid into court, which was done."

We need only add that the record fully sustains this statement by the respondents.

The contract as submitted by Fullerton was very positive in its requirements, and so positive that, as it was drawn, its requirements would necessarily have been fully lived up to in order to deprive Fullerton of any portion of the deposit. Before Fullerton could have been required to pay any portion thereof, Myers would have been obligated to purchase the property "at the lowest figure obtainable at public sale." This was reinforced by a subsequent provision that Myers must have been "compelled at said sale to pay a larger amount" than what was named. This phraseology was so specific that Fullerton was entitled to have Myers bid at the sale the lowest figure obtainable without complicating the result by prior negotiations. Nevertheless, Myers' addendum substantially changed the nature of the proposed contract. It is true that he added the words, "or through any proceedings thereafter," which might well have been added without depriving Fullerton of his right to an unincumbered and unrestricted public sale, because it would only have been a provident thing for Myers to have looked out for the possibility of objections being taken to a confirmation of the sale. If that had been the only change made by Myers, the case would have still been with Fullerton throughout. But when he inserted the more general terms that, if the cost to him exceeded the specified sum, he relieved himself from making the exact time of an unrestricted and unembarrassed public sale the test; and his only obligation remaining was to proceed in a prudent manner to secure an arrangement which was to be perfected "at the time of the purchase under foreclosure sale," such as might safely have been accomplished. In view of what is shown in the record of the character of the parties with whom Myers was contending, it cannot be doubted that his course was prudent, and that, in any fair sense of the addendum which he put on the contract, he accomplished the purchase at the lowest price consistent with reasonable certainty for the accomplishment of the result which all the parties were looking for.

The complainant maintains that the Kimber bonds and judgment referred to in the contract between Myers and Fullerton were in fact purchased before the foreclosure sale took place. If such had been the case,

then the addendum made by Myers might not have saved him. On the other hand, the circumstances were that whoever controlled the Kimber bonds and judgment relied on an assurance given by Myers' counsel that a bid would be made at the sale sufficient to accomplish the purpose of those holders; and therefore they did not appear. The sale was made as stated by the respondents, and, immediately after the sale was made, the amount bid was paid by Myers' representative. The whole transaction conforms to the contract finally settled between the parties, as fairly and reasonably construed. The expression made use of by Fullerton in reference to the obligation intended by him to be imposed on Myers to purchase "at the lowest figure obtainable at public sale" was neutralized, as we have shown. Consequently, Myers must prevail, and the decree of the Circuit Court, so far as that is concerned, must be affirmed.

The depositary named in the contract between Fullerton and Myers was the United States Trust Company of Kansas City; but, by an arrangement, Bigelow was substituted for that corporation, and he executed a formal instrument establishing his position in reference thereto. The record shows that, when Bigelow signed the instrument executed by him, he had before him the contract between Fullerton and Myers; so we need not trouble ourselves to examine the precise terms of his written obligation. We, however, deem it proper to notice that the Circuit Court in its final decree directed that Bigelow should reimburse himself from the fund remaining in the sum of $277.06 for disbursements in this litigation, and for counsel fees incurred therein to the amount of $1,000. This is assigned for error, but this assignment has not been brought to our attention at our bar by the appellant. Prima facie, a mere depositary is bound to remain neutral, and cannot take part in the principal litigation; and he is not entitled to involve himself in costs and fees beyond what is required to retain a solicitor to observe the proceedings in the case. Moreover, there is nothing in the record brought to our attention that could in any way be regarded as "plea and proof" in reference to this allowance. However, the appellant has given us no light in regard to the circumstances. Therefore, we cannot adjudicate in reference thereto.

The decree of the Circuit Court is affirmed, and the appellees recover their costs of appeal.